# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| QBE SPECIALTY INSURANCE COMPANY, a foreign corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KIT MORRISON, an individual; GLOBAL RESOURCE PARTNERS, INC., a foreign corporation; and KSM, LLC, a foreign limited liability company,<br><br>Defendants. | Case No.: 2:13–cv-00119-JAD-NJK<br><br>**Order Granting Motion for Partial Summary Judgment [#14]** |

This is a breach of contract and equitable subrogation case in which defendants—investors hoping to purchase real estate in Idaho—twice failed to fulfill the written agreements they made with the specialty insurance company whose surety bonds helped them secure that real estate. I grant the insurance company's motion for partial summary judgment, a motion to which defendants failed to respond.[1]

## Background

On September 4, 2009, defendants Kitt Morrison, Global Resource Partners, Inc., and KSM LLC, entered into real estate purchase contracts for property in Elmore County, Idaho with Trinity Springs LLC.[2] The contracts required defendants to provide Trinity with surety bonds

---

[1] I find this motion appropriate for resolution without oral argument. L.R.78-2.

[2] Doc. 14 at ¶¶1-3.

1  guaranteeing that if defendants failed to perform their part of the contract, the surety would pay
2  Trinity a penal sum of $900,000.[3]

3  QBE Specialty Insurance Company is an insurance company that issues surety bonds. It
4  entered into separate but essentially identical written agreements with defendants five days after
5  they penned the Trinity deal.[4] These agreements stipulated that (1) QBE would provide the
6  required surety bonds for defendants to complete the Trinity[5] purchase, and (2) defendants would
7  fully indemnify QBE for any sums paid.[6]

8  Defendants defaulted on their obligation to Trinity in May 2010, triggering QBE's surety
9  obligation for the full $900,000.[7] QBE notified defendants of its payment on their behalf and
10 demanded to be fully indemnified as promised by the surety agreements.[8]

11 More than two years passed with no indemnification. Then, on October 10, 2012, QBE
12 and defendants reached a settlement agreement in which defendants agreed to pay QBE a reduced
13 sum of $366,000 within 90 days of the execution of the agreement. Those 90 days passed with no
14 payment whatsoever.[9]

15 On January 31, 2013, QBE sued defendants for specific performance, breach of contract,
16 equitable subrogation, unjust enrichment, and breach of the duty of good faith and fair dealing.[10]

---

[3]*Id.* at ¶¶6-9.

[4]*Id.* at ¶15-17.

[5]Docs. 14-9, 14-10, 14-11.

[6]Docs. 14-6 at 7, 14-7 at 6, 14-8 at 6.

[7]Doc. 14 at ¶21.

[8]*Id*.

[9]*Id*. at ¶¶21-23.

[10]Doc. 4.

Defendants answered.[11] QBE now moves for partial summary judgment on its breach of contract claim and equitable subrogation claim. Having considered both claims on their merits, I grant QBE's motion.

**Discussion**

**A.     Breach of Surety Bond Contract and Settlement Agreement**

A cause of action for breach of contract requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.[12]

It is undisputed that defendants entered into valid contracts with QBE for $900,000 in surety bonds in September of 2009. It is undisputed that these contracts included an indemnity clause that fully protected QBE in the event that QBE, acting on behalf of defendants, suffered any financial damages. It is undisputed that QBE, acting on behalf of defendants, suffered financial damages totaling $900,000 when defendants defaulted on their obligations to Trinity, thus forcing QBE to pay that amount to Trinity. And it is undisputed that, when this happened, defendants, in direct violation of the surety contracts, failed to indemnify QBE.

It seems undisputed, therefore, that defendants breached their surety bond contracts with QBE. There was a valid contract, properly authenticated by Donna L. Messick, the Senior Claims Handler of Credit and Surety for QBE.[13] There was a clear breach of the contract's indemnity clause by the defendants. And there was, as result, damage: QBE is out the $900,000 the indemnity clause was designed to protect it from losing.

It also seems undisputed that defendants, after breaching the surety contracts, then breached their settlement agreement with QBE. Again there was a valid contract, in the form of a

---

[11]Doc. 7.

[12]*Brown v. Kinross Gold U.S.A., Inc*., 531 F.2d 1234, 1240 (D. Nev. 2008) *citing Saini v. Int'l Game Tech*., 434 F.2d 913, 920-921 (D. Nev.2006).

[13]Doc. 14-1.

settlement agreement in which defendants agreed to collectively pay QBE $366,000 within 90 days of October 12, 2012. Again there was a clear breach by defendants: they did not pay QBE the agreed-upon sum in the agreed-upon amount of time. And again there was damage—namely, the $366,000 QBE was supposed to receive had defendants honored their end of the contract.

**B.      Failure to Oppose**

Of course, part of why all this seems undisputed is because defendants failed to address QBE's assertions of fact as required by FRCP 56 (c) and Local Rule 7-2 (b). In fact, they filed no response at all.

This does not mean, however, that I can grant partial summary judgment by default[14]; summary judgment, FRCP 56 (e) tells us, can only be granted if the record supports it. But what I can do is consider QBE's facts undisputed.[15] And when I do that, the breach of contract in this case becomes clear, as does QBE's entitlement to relief under its equitable subrogation claim.

**C.      Equitable Subrogation**

A broad equitable remedy, equitable subrogation is appropriate whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."[16] It requires a showing that (1) the debt payment was made by QBE to protect its own interest; (2) QBE did not act as a volunteer when paying this debt; (3) the debt was one for which QBE was not primarily liable; (4) the entire debt was paid; (5) subrogation would not work any injustice to the rights of others.[17]

Here, the debt payment of $900,000 was paid to Trinity by QBE to protect QBE's own interest of following through on its surety bond contract with defendants. QBE did not provide

---

[14]*Heinemann v. Satterberg*, 731 F.3d 914, 916-917 (9th Cir. 2013)

[15]Fed. R. Civ. Pro. 56 (e)(2).

[16]*Han v. United States*, 944 F.2d 526, 529 (9th Cir. 1991) (citations omitted).

[17]*Id*.

this debt payment as a volunteer, but rather as a party to a valid surety contract. The debt, which QBE paid in full, was one for which defendants—not QBE—were primarily liable. And because Trinity already received the $900,000 it was owed, granting subrogation to QBE would not work any injustice to the rights of others.

Therefore, I also grant summary judgment in favor of QBE on its subrogation cause of action. On both claims, QBE has successfully satisfied FRCP 56(c): it has shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] Reasonable minds could not differ on the material facts at issue, especially considering defendants failed to file any response disputing those facts.

**D.    Remedy**

The amount of compensatory damages required to make QBE whole under its breach of contract claim is $900,000. This is also the amount of reimbursement required to prevent against unjust enrichment under QBE's equitable subrogation claim. Therefore, $900,000 is the total amount of defendants' liability to QBE.

**Conclusion**

**IT IS HEREBY ORDERED** that QBE Specialty Insurance Company's motion for partial summary judgment (Doc. 14) **IS GRANTED**. Summary judgment is entered in favor of QBE and against defendants on QBE's second and third claims of relief.

Dated September 8, 2014.

_____
Jennifer A. Dorsey
United States District Court Judge

---

[18] *Celotex Corp. v. Catrett.*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. Pro. 56 (c)).